## Pittsburgh, Appellant, v. Weinman et al.

*Road law—Abandonment of old road—Relocation—Estoppel—*
*Municipalities — Evidence — Assessment of land for taxes — In-*
*junction—Quarry.*

1. A municipality may, by its conduct, be held estopped from as-
serting title to an old roadbed which, for a long period of years,
it had apparently abandoned.

2. Where an old roadbed has been treated as abandoned for many
years both by a municipality and abutting owners, the assessment
and payment of taxes on such strip of land is evidence of a recog-
nition on the part of the city of title in the abutting owners, and
also an intent on the part of the city to abandon any title it had
in the old roadbed.

3. A municipality cannot by injunction compel the owners of a
quarry from so operating its quarry as to prevent the sinking of a
surface of a street, where the evidence shows that the sinking was
caused by percolation of water through a mass of earth which the
city had wrongfully deposited on defendant's property in relo-
cating a public road.

4. In such case, the city does not, by mere inaction on the part of
the owners, acquire a right of support for the additional burden
cast on the adjoining land by the deposit of earth.

Argued May 12, 1926.    Before MOSCHZISKER, C. J.,
FRAZER, WALLING, SIMPSON, KEPHART, SADLER and
SCHAFFER, JJ.

Appeal, No. 44, March T., 1926, by plaintiff, from de-
cree of C. P. Allegheny Co., Jan. T., 1925, No. 1823, dis-
missing bill in equity in case of Pittsburgh v. William
Weinman et al., individually and as partners doing
business as Weinman Brothers.    Affirmed.

Bill in equity to enjoin quarrying operations, and to
compel the erection of retaining walls.    Before EVANS, J.

The opinion of the Supreme Court states the facts.

Bill dismissed.    Plaintiff appealed.

*Error assigned* was, inter alia, decree, quoting record.

*Thomas M. Benner,* First Assistant City Solicitor, with him *Charles A. Waldschmidt,* City Solicitor, for appellants.—An existing highway, legally established, can be destroyed only by affirmative vacation proceedings or by abandonment that is so clear and unequivocal that there can be no question about it: Breisch v. Coal Co., 267 Pa. 546; Hancock v. Boro., 148 Pa. 635; Com. v. Dicken, 145 Pa. 453; Gray v. Twp., 208 Pa. 79; Oakdale v. Sterling, 43 W. N. C. 123; Buskirk v. Dawley, 91 Pa. 423; Ross v. Malcolm, 40 Pa. 284; Morrow v. Com., 48 Pa. 305; Manheim Twp., 12 Pa. Superior Ct. 279.

The vacation of a street is an affirmative act. The abandonment of a street is usually claimed to result from failure to act: Breish v. Coal Co., 267 Pa. 546; Pittsburgh v. Epping-Carpenter Co., 194 Pa. 318; Com. v. McDonald, 16 S. & R. 390; Pittsburgh & Lake Erie R. R. Co., 263 Pa. 294.

It has been repeatedly held that a payment of taxes does not prove title: Pittsburgh v. R. R., 263 Pa. 294.

That the owner of land abutting on a highway is burdened with the duty of preserving lateral support to the highway as constructed and operated for public use is a doctrine that is established and has been recognized by the courts: Pollock v. R. R., 275 Pa. 467.

*C. Elmer Brown,* for appellees.—The authority to alter a road is the authority to substitute a new road for an old one, and, whenever this is done, the old road so far as it is supplied by the new one is vacated: Mill Creek Township v. Reed, 29 Pa. 195; Manheim Twp. Road, 12 Pa. Superior Ct. 279; Gray v. Twp., 208 Pa. 77; Hancock v. Boro., 148 Pa. 635.

The city cannot lose title merely by adverse possession on the part of the abutter, but circumstances may indicate an abandonment which will be effective to divest the city's title: Pittsburgh v. Ry., 283 Pa. 196; Pittsburgh Rys. v. Boro., 259 Pa. 333; Reid Creamery & Dairy Sup-

ply Co. v. Phila., 274 Pa. 251; see also Hershburger v. Pittsburgh; 115 Pa. 78.

OPINION BY MR. JUSTICE FRAZER, June 26, 1926:

Plaintiff's bill alleges defendants, in operating their stone quarry, located on land abutting on the western side of Southern Avenue, in plaintiff city, have deprived that avenue of necessary lateral support, thus causing the sinking of the street's surface, and asks for an injunction, restraining the operation of the quarry, and a decree commanding defendants to restore the highway to its proper condition, and secure its support by a suitable retaining wall. The court below dismissed the bill and the city appealed.

Southern Avenue was originally a township road, and, subsequent to that territory becoming part of plaintiff city, was, by ordinance approved.April 1, 1886, relocated and established from Wyoming Street to Boggs Avenue, with a width of 40 feet, and later opened as of this width and damages and benefits assessed and paid. By ordinance of June 29, 1891, the location of the street was again changed by altering its direction, and moving its junction with Boggs Avenue 70 feet eastward of the centre line as fixed by ordinance of April 1, 1886. The ordinance of 1891 contained a general clause repealing provisions of all inconsistent ordinances. Subsequently in 1897 a sewer was laid in the relocated street by the city and in 1899, under the provisions of an ordinance approved March 31, 1898, the street as relocated was graded, paved, and curbed, with a driveway twenty-four feet in width, and sidewalks of eight feet in width.

In its original location, Southern Avenue ran along the side of a steep hill, at the foot of which is a stone quarry operated by defendants. In relocating the street under the ordinance of April 1, 1886, the bank on the east side was cut into, and a considerable portion of the excavated earth dumped on the westerly side of the street on defendant's property. The completed improve-

ment left a vacant strip of ground varying from 35 to 70 feet in width between the relocated avenue and defendant's original property line; this strip included a portion of the old roadbed, which the court below found the city abandoned at the time it relocated the avenue, by moving it east of its original location. In making the improvement, earth thrown over the bank on defendant's property covered a hillside spring, situated midway between the street and the quarry, obstructing its flow of water and partially concealing a near-by spring house. During several years following the improvement of the street, slides occurred from time to time on defendant's property, apparently due, in part at least, to water flowing from the closed spring percolating through the soil and causing the hillside earth to loosen and slip. At this point the gradual sinking and slipping of the surface finally extended across the former bed of the abandoned highway causing damage to the west side of the avenue as relocated and improved. Expert witnesses testified that the fact that the slipping was confined to earth above the spring, indicated the closing of the natural channel of the water from the spring, compelling it to seek other means of outlet, and in so doing to percolate through and saturate the soil, affecting its cohesion to such extent as to increase its tendency to slide.

The city claims it retains title to the abandoned bed of Southern Avenue, contending the ordinance of June 29, 1891, is irregular and void, so far as it attempts to vacate the street as originally laid out by ordinance of April 1, 1886, and that the mere change in location of the old road, did not amount to a surrender of the ground included in its bed. Assuming, for the present, the proceedings to be irregular, it does not follow the conclusion reached by the court below was erroneous. No objection to the validity of the city's action was raised by abutting owners, and heretofore all parties concerned, including the municipality, treated the old road bed as abandoned, and reverting to the abutting

owners.   The strip mentioned has been assessed for the purpose of taxation by the city, against defendants and their predecessors in title.   Although assessment and payment of taxes on property is not proof of title, yet, under the circumstances here involved, it should. be treated as a recognition by the city of title in the abutting owners, and evidence of intent on the part of the city to abandon any title it had to the old location; add to this, the further circumstance of making permanent improvements on the new location by the city, with surrender of control over the old roadbed, and we think a situation was created ample to warrant the court below, at least in these proceedings, in reaching its conclusion that a vacation of the old street bed was intended by the city, and title to the vacated ground consequently reverted to the abutting property owners: Mill Creek Twp. Road v. Reed, 29 Pa. 195.   Having relinquished its rights in the bed of the vacated highway for many years, the position of the city in now attempting to assert ownership, for the sole purpose of compelling the abutting owners to furnish support to the hillside, is not such a contention as calls for favorable consideration by a court of equity.   The municipality may properly be held estopped by its conduct from asserting title to what it had apparently abandoned for a long period of years: Pittsburgh v. Pittsburgh & West Virginia Ry., 283 Pa. 196.

No suggestion appears that the city undertook to appropriate land beyond that actually necessary for the street bed, for any purpose, consequently it had no right to deposit earth excavated on the east hillside of the street, on defendant's property abutting the lower opposite or west side.   While apparently no objection was made to such action, the city did not, by mere inaction on the part of the owner, acquire a right of support for the additional burden thus cast upon the adjoining land.   Furthermore, the evidence warrants the conclusion that the immediate cause of the slide was not the operation of defendant's quarry, which in fact had not

approached toward the hillside for a number of years, but the extra burden placed on the land by depositing thereon the excavated earth from the new location of the street, plus the covering of the spring by that material and consequent percolation of its water through, and saturation of, the newly deposited ground, thus increasing its tendency to slide. The direct responsibility for the damage to Southern Avenue resulting from the sliding of earth above defendant's quarry, placed there by the city at the time of improving the street, accordingly rests with the city, and it cannot now compel defendants to assume the burden of a condition for which they were not responsible.

The decree of the court below is affirmed at plaintiff's costs.